Andrea Asalde v. First Class Parking Systems LLC Take your time, but we'll wrap up this morning with Rodriguez Asalde v. First Class Parking Systems Case No. 16-16814 One second, Mr. Zeidel Whenever you're ready Thank you, Judge. Good morning, I'm Jay Zeidel On behalf of the three appellants Our appeal focuses on what we believe to be error on the district judge's part Not finding FLSA jurisdiction applicable to a valet parking company The years involved are from 2011 to 2015 And as the judge's summary judgment order states And I think that this will help us to get through the oral argument quickly The fact, and I'm reading from footnote number 4, page 5 of the summary judgment order on appeal The fact that plaintiffs handled walkie-talkies, pens, uniforms, valet tickets, and other items That originated out of state does not change the intrastate nature of their work Those other items were a time clock and passenger luggage or visitor luggage That some of the plaintiffs, or at least two of them, used to help The out-of-country or out-of-state guests take up to their condominium or rooms that they were assisting with So, for purposes of this appeal, the district judge accepted the fact that all of these other items Originated out of state And she found that, nevertheless, that these items were not materials As this court defined in the polycarp decision But rather defined them as goods subject to the ultimate consumer exception to coverage How does this case square with the Rodriguez v. Goldstar case that was decided this summer by the circuit? This case has all of the other items that the valet parkers regularly used on a concurrent basis Not just the automobiles In which Rodriguez only dealt with parking automobiles for customers And nothing else as far as interstate commerce was concerned So this case deals with, even though this court did find that automobiles Or the parking of automobiles by another plaintiff that worked for this company In the Rodriguez decision, that the automobiles were goods And that those goods had come to rest and were subject to the ultimate consumer exception Nevertheless, those goods required a lot of materials to be used along with them And that's what this case involves, are those other materials Such as the parking tickets that had to be given to the guests that were parking their cars Rodriguez said that those are the sort of things that are the tools that are applied to the goods Which is the automobiles, that the automobiles is the business And that there are other things that were used in connection with the valet parking of automobiles That didn't change the nature of the business, which was the cars Well, it may not have changed the nature of the business for that case But I don't believe that Rodriguez held that valet parkers are exempt from overtime and minimum wages I mean, that wouldn't be proper to exempt them as a class of workers via an appellate decision But in this case, what we've shown is we've gone past the automobiles to show that these items And this court defined what materials are in the polycarp decision Which is the binding relevant case in this circuit for FLSA coverage And materials are those items that are used predominantly by employees That are necessary or related to the principal function of the employer's business And I think that it doesn't even require great imagination to understand why parking tickets, uniforms Walkie-talkies and pens and a time clock As well as transporting visitor luggage, visitors who came from out of the country and out of state Why those items are related to a parking valet company's principal business I mean, that doesn't, that's common sense That nobody's going to give their car to, or no reasonable person would give their car, I should say To somebody that is a valet parker without getting a parking ticket to identify it So that you could reclaim it at the end Any more than they would to somebody who wasn't in a uniform from that valet company It seems to me that pens fail the necessary and related test Because pens can be used in virtually any business They're not connected in any way to the valet business So it seems to me that those don't meet the polycart materials test Well, that could be, your honor But I think that the way that we would view that is that it is a weaker material But nevertheless, without pens, how are valet parkers supposed to write down customer information Or that person lives in unit number 10A I mean, how are they supposed to do that to identify the ticket with the room that the customer's staying in or visiting So I agree that it is a weaker material But nevertheless, I think it's a necessary material I don't know how else they're supposed to do it I mean, if they've got an iPhone or something, they could log in the information that way But they have to be able to inscribe that information some way It seems to me that your best argument is with respect to the valet tickets Could you focus on those? Sure. Well, the valet tickets had a stamp on them that said Shreveport, Louisiana And the district court accepted I'm reading her summary judgment order that she accepted the fact that all of these items came from out of state I mean, that's what her footnote says I don't think that it's necessary to read that order in any other way Then the district court was viewing this as those items having come from out of state The valet tickets, we submitted a valet ticket with sworn testimony from one of the plaintiffs That said that they regularly use these tickets that had markings on them from Shreveport, Louisiana The only evidence that the tickets came from out of state, though, was the Shreveport, Louisiana on the ticket That, along with the plaintiff's testimony that he may have researched the issue as well online To find out where some of these items came from Also, the walkie-talkies that the plaintiffs used in order to communicate with each other To say, hey, I'm bringing the car up now to make sure that the passenger's ready, etc., etc. Those also were researched by a plaintiff or two plaintiffs to show that they came from another country But nevertheless, that wasn't an issue at the lower court The district court judge accepted the fact that all of these items came from out of state But she said that these were goods, nevertheless And it's our position that you can't run a valet parking company without these items Granted, some of them being weaker materials than others But certainly the list of materials that we have here are indispensable and integral to a valet parking company For obvious reasons that we've cited in our brief I know it's getting close to the lunch hour I don't know if we rely on our briefs Our position is that the district judge, in all due respect, misinterpreted goods for materials in this case And subjected them to the ultimate consumer doctrine I mean, just as laundry soap is a material to a washeteria or a dry cleaner Just as china plates, for example, are materials to a catering company Parking tickets, walkie-talkies, uniforms We've talked about the other ones, Mr. Zeidel So let's finish up and close up the loop What was the testimony or evidence in the record about the uniforms having been produced or moved in commerce? Well, the plaintiffs, it came from their affidavits And I believe one of them said that their uniform was from Colombia The other uniforms were from out of Florida, I believe, other countries One was made in China, I believe But that came from the plaintiff's testimony, looking at the uniforms that they used And once again, the district court judge accepted that It appears that she accepted it from her footnote And I know that the appellees raise all kinds of contentions in their answer brief To the effect that this may have been hearsay, etc., etc. But that's not what this appeal is about Because the district court accepted those items from coming from out of state And it's not hearsay because the employer's in a much better position to verify Where its parking tickets come from, for example Where its time clock comes from Where its uniforms come from Where the walkie-talkies come from I know that they say, well, they only lease the walkie-talkies But that doesn't matter Because there's nothing in the statute that requires that the employer buy the materials In order to give them to its employees In order to be covered under this statute It says any person, if these materials come from any person It doesn't just require The uniforms didn't come from the employer? I don't think that they say that They say that the walkie-talkies were leased Rather than bought and given to the employees I think that that's what their position is But the uniforms, I don't think that there's ever any opposition To the fact that they were provided by the employer So for those reasons, we rest on our brief If the court doesn't have any further questions We just think that this was a misinterpretation By the district judge of goods for materials And it should have been the latter And she used the former Thank you Okay, Mr. Dell, you saved your five minutes for rebuttal Thank you Thank you Thank you Mr. Coogan Good morning, Maine Police Court Your Honor, I'd like to address the parking tickets directly As Judge Pryor asked a question about them The only testimony throughout the entire discovery process Was that the valley parking tickets were purchased locally And it was George Zulaga who testified That he would order them locally That he would go to Fort Lauderdale and pick them up And during his deposition, he said that there were Printing presses in the background Where they were being printed The only evidence that came from the defendants Regarding the actual tickets themselves Was when they asked for them in discovery The defendants responded that they didn't save the tickets Because the tickets were disposed of In the due course of business And then They didn't have any? No, Your Honor They didn't have any that they had used Oh, the ones that were used before Got it, got it I'm sure they could have gone out and bought some And produced them But the ones that they use are discarded afterwards Right, understood What happens now is that we go through the discovery process Discovery closes And then we go into a hearing Where the plaintiff in the case Asked for an extension of the discovery period Of which the trial court denied that order Then the first time that we ever see a parking ticket It's provided by one of the plaintiffs in the case In the response to the defendant's motion for summary judgment And when we had asked for any and all documents That were going to be relied upon throughout the case The plaintiff in his response The plaintiff who produced the ticket Said that he objected to it And then answered that he had none So here we are not only at the 11th hour But at the 12th hour Where now all of a sudden this ticket has been produced And if Your Honors will take a look at that ticket Which is a part of the record You'll see that it doesn't say that it's printed in Shreveport, Louisiana It doesn't say that it's printed anywhere It says printed in the USA And Florida being part of the USA And the only record evidence in this particular case As to that particular parking ticket Was from George Zulaga Who while he was being deposed Said that he went to Fort Lauderdale He would order them in Fort Lauderdale He would go to Fort Lauderdale and pick them up And they were being printed there So your argument is that Shreveport, Louisiana Could just be where the company is headquartered Absolutely Your Honor It could be copyrighted by a Shreveport company I have no idea However throughout the entire process Plaintiffs could have gone and conducted discovery into that Now what they'd like to do is They'd like to point out footnote 4 In the judge's order Where she granted our motion for summary judgment I'd just like to talk about some of the other issues as well Before we do that You're basically asking us to do the summary If we go to that point If we disagree with you on the district court's major rationale You want us to basically do the summary judgment Over again To conduct the summary judgment analysis ourselves To figure out whether or not certain evidence is hearsay Whether or not certain evidence is probative Whether or not certain evidence creates an issue of fact About where a product or material originated and the like Yes Your Honor Because her footnote 4 Rightly or wrongly assumes That these materials or items had originated outside And I believe Your Honor That the reason that she wrote footnote 4 like that Is because she was construing all facts In favor of the plaintiffs Which is the proper way to do it You think she got that wrong? I'm sorry Your Honor You think she got that point wrong? I believe that because it was put in a footnote And was not part of her holding No no no Do you think she viewed the evidence and the like Most favorable to the plaintiffs? In that particular footnote I think she did Did she do that correctly or incorrectly? I'm sorry Your Honor Was she right or wrong in doing that in footnote 4? I think that she was right in doing it And in saying that Even if I were to consider this Being that all of the arguments That defendants have already made here It would still not change my decision And the reason being is Because it was subject to the ultimate consumer exception So I think that's why it's in a footnote Your Honor And I think that if it had been in the dicta I think it would be different And I think if it was in the actual holding Then we probably wouldn't be here today So you think that there If you look at the evidence and the like Most favorable to the plaintiffs You think there's an issue I don't want to say of material fact But do you think there's an issue of fact As to whether or not the walkie talkies The pens, the uniforms And the valet tickets originated out of state? I don't think there's any issue that they did Your Honor Because the record is totally devoid of anything That says different than that I'm a little bit confused then Because I thought you said that she had Correctly viewed the evidence and the like Most favorable to the plaintiffs And I think the reason that we take it in the context That it's in a footnote Your Honor Is that she was saying even if I would still find this If she had said even if I think I would agree with you wholeheartedly But that's not the way the footnote reads It says the fact that the plaintiffs Handled these items, paraphrasing That originated out of state And Your Honor then I would then Like to argue and to bring to your attention That while Mr. Zeidel brings the burden He's saying that it's in order for it to Carry the day for the plaintiffs in this case That those particular items would have to be necessary Or in some way related to the business But that's not the standard The standard is that it has to be significant And necessary to the business So just like How do you distinguish How do you distinguish soap for a laundromat Or a dry cleaning service? Well in this particular case Your Honor That in that particular case Your Honor The soap, it was not contested That the soap had come from outside of the state Right, so let's assume that for And this is an assumption I'm asking you to make That all of these items that The district court referred to in footnote 4 Came from out of state If they did is Is summary judgment appropriate? No Your Honor and the reason is Is because none of those items are significant And necessary as to valet parking cars As a matter of fact Your Honor They don't even use valet tickets anymore They're a thing of the past They're not necessary Walkie-talkies are not important? No Your Honor and my client The only testimony as to the walkie-talkies Is that my client did not own any walkie-talkies They just leased them sometimes And For what purpose? I'm sorry Your Honor For what purpose did they lease them? I don't know, it was not discovered But didn't the plaintiffs have evidence Through affidavits that they use walkie-talkies In their work as valets? Well actually the testimony was Was that at one of the condo associations One of the valet parkers had a walkie-talkie And he believed that it had been provided to him By the condo association And it was so that he could communicate Or that the front desk could communicate with him And he worked night shifts And so they wanted to be able to have communication And as for the uniforms Again this was the 12th hour None of the issue of the uniforms Ever came up throughout the litigation The first time that we ever hear about uniforms Is at the point when the plaintiffs Are responding to the defendant's motion For summary judgment All of a sudden there are uniforms And that supposedly these uniforms were purchased Or that they were manufactured somewhere else And just like when we argued in Rodriguez Your Honors Is we could take this to the nth degree Which basically would say that Since it's against the law for valet parkers To walk around naked and valet park cars That the clothes that they're wearing Since they are manufactured outside of the state of Florida That there would then be interstate commerce For every single business Where you have to wear clothes And that's the extreme to this But in this case The employer is providing a certain set of clothes To distinguish the valet attendants From anybody else, right? I'm not sure if that's why they provided them Your Honor, it's not in the record That question was never asked Why couldn't a reasonable person figure out That part of what makes or drives an employer To use uniforms is to distinguish its employees In one way, shape or form from other people Or even people within a company Yes, Your Honor And once we had that Once we were at that point We would then have to go to the next point Which would be the analysis Which would have been plaintiff's burden in this case To argue that those uniforms were significant And necessary to running a valet company Throughout the entire briefing process Of the motion for summary judgment The response And the briefing process here, Your Honor Never once has plaintiffs ever argued Except for when he came up orally just now And gave the standard of necessary and related Has anyone ever argued that any of these items Were significant and necessary To running a valet parking company That argument wasn't made below, you say? It was not, Your Honor So even in the laundry case If you think of a laundry and its soap I doubt that laundry soap is ever manufactured And I don't know of any soap laundry producer in Georgia Yet we have lots of laundries The fact that that came from out of state Assuming it came from out of state The shirts are what are being laundered Or the dresses or whatever And they're returned to the ultimate consumer It seems to me that if we say that Let's look at all the different things That people use in connection with their business That are touched by the employees To apply to the ultimate purpose of the business There's not a single business That would not be covered by this statute And it would make this statute This part of the statute meaningless Actually, I don't necessarily agree with that, Your Honor And the reason being is because There's a distinct difference Between materials and goods And only goods are ever subject To the ultimate consumer So the material, the soap Would actually be a material And even though it's consumed Or by the business It doesn't make any difference So it's actually a subcategory And that difference was Basically given to us by this court In the Polycarp decision So in Polycarp what happened was Is that they were making a distinction Between materials Which is actually part of the A new word that was added To the Handlings Clause Which before it was goods And the goods were subject to The ultimate consumer exception In the original Rodriguez case, Your Honor The court in a published decision Said that the cars were more akin To the shirts that were being laundered Than the actual soap So I believe that Most businesses A very large percentage of businesses Are all covered by the FLSA And there are only a very small exception That would ever be totally intrusive Such as a demolition company A company that was demolishing buildings That type of a thing Maybe I'm hung up on Rodriguez Which I've read five or six times And you get to the final holding It's a valet parking case Because we hold the cars Rodriguez parks are goods and not materials The ultimate consumer exception Operates to exclude from the category Of covered goods the handling The cars had issued Because they were returned to the person Who delivered the cars to the valet company Ultimately they're delivered back In that case they affirm Summary judgment for the valet car company And Your Honor It's almost exactly the same case The only difference are There are five different items We're talking about pens, radios, shirts Valet tickets And one other I'm sure But again I think that Which I would say are incidental To the parking of valet cars Which is what the court I think And polycarbonate also here says You have to look at what the business is And see what's incidental to the business And just because they might be materials Doesn't mean that the business now Is something that's covered by the FSLA You have to look at the nature of the business My understanding is Your Honor Is that materials are never Subject to the ultimate consumer exception But I think where this case The reason that this case should be affirmed Is because while we may have these materials They may be materials I believe they're actually goods Your Honor But the fact is that It was never argued throughout the entire Briefing process It wasn't argued in the motions for summary judgment In the motion for summary judgment Or in the response to the motion for summary judgment Nor was it argued in the briefing here That any of those goods Were significant and necessary To conducting the business That my clients did Which was parking cars In South Florida Just a technical question On summary judgment if you're saying these Items were first brought up Were they because they were There was a declaration or affidavit attached And from whom was the declaration or affidavit The plaintiffs or somebody else Well if you I'm sorry Your Honor Just trying to figure out how did these You're saying they were first raised On summary judgment Actually the ticket was first brought in To evidence at the summary judgment stage Was that because somebody signed an affidavit Saying this is a ticket Yes Your Honor And who did that And we challenged that And we moved the court to strike it But the prejudice to the defendants In this particular case Would be that you hold on to the ticket All the way until summary judgment stage Then what happens is that I don't have it The discovery is not opened After two requests by the plaintiff to open it And it's there in the record I should have been able to Have the opportunity to ask the person Who signed the affidavit Where did you get this ticket The ticket doesn't even have a year on it It just has a month and a day I should have been able to ask him Where did this ticket come from Why didn't you produce this ticket during discovery When we asked you for it and you said none And where is it that you know That you think that this ticket was produced And they totally hang their hat on one thing It says Shreveport, Louisiana on the ticket That's it The district court denied the motion to strike as moot Isn't that right That's a hard question to answer your honor I'm not really sure I mean if you read the bottom of the order For motion for summary judgment That would seem to be it And probably then we go right back circular To footnote four where she says look Even if I did consider it It's still the ultimate consumer exception Which means it's a good Which means that it doesn't come into the analysis Which means that summary judgment was properly granted But with regard to the argument you're making About the affidavit and the ticket That's something the district court would have to decide In the first instance You're not asking us to decide that No your honor And I think what she said in footnote four When we go right back is Look even if I did consider it Which I kind of did It's still ultimate consumer exception So if the court is going to go back And say that the ultimate consumer in section Doesn't apply Then I would ask the court to go back And consider that motion as well As where did this come in And how did this prejudice the defendants Throughout the motion for summary judgment I think that's only fair We have it on this And we have it on that I just wanted to figure out How it got in the record Yes sir Now I know Thank you your honor Thank you Mr. Kubin We appreciate it Mr. Zeidel I started out by saying That to simplify the oral argument That we would assume That the district judge accepted All of these materials From coming from out of state I guess that I shouldn't assume What happened was Is that if you review the docket As of June of 2016 The parties had consented to the magistrate With an agreement To extend discovery For another 90 or 120 days The consent was filed Three days later Mr. Kubin retracted it Judge Cook had a hearing Was very upset Why he filed it in the first place He said he didn't read the line on the email That said to extend discovery For another 120 days And that's what happened So that the court understands Second thing is Is that we propounded written discovery And we asked where this stuff came from And we were stonewalled They just burned out the discovery period And basically said To admit that on a regular And recurrent basis for the time frame Plaintiff was handling Or otherwise working With parking stubs receipts That were on paper That had ink That was manufactured Or produced outside of Florida Objection over broad Irrelevant Because the parking receipts Were purchased in Florida Other admissions Were the same thing Denied, denied, denied So we tried to do this This was the consequence Of a rocket docket discovery That was imposed By the district judge And she considered All of this obviously I mean that footnote Says what it does To the summary judgment order In conclusion This is a coverage issue Coverage under the FLSA Is supposed to be Interpreted not in a grudging manner It's a humanitarian statute And it has to be interpreted As broad as congressional intent Allows for it to be interpreted To quibble over Whether or not a parking ticket Or a walkie talkie Pens, shirts, uniforms And these other items Were goods or materials I would say this That if there's even a doubt I don't think that there's a doubt Because I think that common sense Dictates That a parking valet company Cannot be managed or run Nobody is going to leave their car With somebody that doesn't have proper ID And a way of locating that vehicle A reasonable person would not do that But let's just say that there's doubt That these were goods or materials Well you know what If there's doubt It should be construed in favor of coverage Because that's what all the cases say That's what Polycarp alludes to When it comes to coverage Liberal interpretation is required As far as congressional intent allows We tried to get Rodriguez Reconsidered in bonk Because we think that the parking of those cars That the cars when valets take them Are materials And they're not goods Subject to the ultimate consumer protection That motion for rehearing in bonk Was denied If somehow this panel could get it To be reheard in bonk I think that that would be An excellent, excellent way Of trying to reconcile All of these decisions But even if you don't This case is factually distinguished By those extra materials That were used recurrently By two or more employees For this company During the relevant time period As far as the summary judgment response Was concerned Maybe Mr. Cuban didn't read it Before coming today Or forgot about it But at page 12 and 13 We do argue that these materials Were integral to the employer's business If you specifically at page 12 and 13 And I quote Plaintiffs handled materials Such as the walkie-talkies, pens, etc. That had a significant And not incidental relationship To the defendant's business activity And then we quote plaintiff Sansonovich's affidavit Where he details Why these things were important to the business So I think that Mr. Cuban was mistaken When he represented that The other The only other matters That I'd like to bring to your To the panel's attention Is that we are asking that this court Find that FLSA jurisdiction applies Because we think that there's enough In the record to do that Obviously we would like for it Just to be decided at this level However before deciding Whether or not to return it To the district judge To resolve factual disputes If the panel decides That there are factual disputes I would just respectfully ask That the court review One of Judge Altanaga's orders From a similar situation Dealing with stamps on products In another FLSA case And basically she goes through A detailed analysis As it being within the court's discretion Whether or not to accept items That have a marking on them Without authentication And also cites case law That the whole hearsay issue involved Is really mitigated In these type of employer-employee circumstances Where the materials come from the employer Because the employer is much better seated To find out I mean the hearsay Is being able to challenge Somebody else's assertion And who's in a better position Besides an employer To challenge that these tickets Were in Shreveport The employer said I don't know I don't know Or objected in discovery To producing what they had But to come at this stage And to say that they were prejudiced We don't think that it's proper For this panel to decide In the first instance And the second one is That I would just like to cite this order For the record It is Judge Altanaga's prior case 09-228-47 It's document number 127 And at the end of that post-trial order She details about these items That have stamps And when employees just testify to them And when the actual product Has to be brought in But like I say I don't think that we even need to get there Because the district judge decided She said that these items Even taking it As that they originated from out of state They're still goods And we lose And that's just wrong So we ask for that to be reversed In one way or another Thank you All right, thank you both very much We're in recess until tomorrow morning All rise